Edward F. Maluf (EM 6884)
Eugenie M. Cesar-Fabian (EF 1104)
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
212.705.7000

Attorneys for Plaintiffs
*Art Capital Group, LLC* and
*Art Capital Group, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ART CAPITAL GROUP, LLC and ART CAPITAL GROUP, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> FINE ART CAPITAL, LLC and EMIGRANT BANK, <br><br> Defendants. | 07 CIV 3879 <br><br> **COMPLAINT** <br><br> **Jury Demand** |

[Stamp: RECEIVED MAY 17 2007 U.S.D.C. S.D.N.Y. CASHIERS]

[Stamp: JUDGE SCHEINDLIN]

Plaintiffs Art Capital Group, LLC and Art Capital Group, Inc. (collectively, "Art Capital"), by their undersigned attorneys, for their Complaint herein allege upon knowledge as to themselves and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.   This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; for unfair competition and trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); for tarnishment in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c); for copyright infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*; for violations of New York General Obligation Law § 360-l; for common law trademark infringement, and for common law unfair competition.

## PARTIES

2. Plaintiff Art Capital Group, LLC is a limited liability corporation duly organized under the laws of State of Delaware, with offices at 980 Madison Avenue, New York, New York 10021.

3. Plaintiff Art Capital Group, Inc. (referenced herein collectively with Plaintiff Art Capital Group, LLC, as "Art Capital") is a corporation duly organized under the laws of State of Delaware, with offices at 980 Madison Avenue, New York, New York 10021.

4. Upon information and belief, Defendant Fine Art Capital, LLC ("Fine Art Capital") is a limited liability corporation duly organized under the laws of the State of Delaware, with offices at 6 East 43rd Street, New York, New York 10017.

5. Upon information and belief, Emigrant Bank ("Emigrant") is a savings institution duly organized under the laws of the State of New York, with offices at 5 East 42nd Street, New York, New York 10017.

6. Fine Art Capital claims to be "a part of Emigrant Bank." As such, Fine Art Capital is a subsidiary of Emigrant. Upon information and belief, Fine Art Capital operates under the direction and behest of Emigrant.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the Court's supplemental jurisdiction.

8. Venue is proper in this District under 28 U.S.C. § 1391(c) in that Defendant conducts business in this District so as to subject it to personal jurisdiction and under 28 U.S.C. § 1391(b) in that part of the events giving rise to the claims occurred in this District.

## COMMON ALLEGATIONS

9.  Art Capital is a financial services firm that offers a wide range of financing, financial advisory and consulting services surrounding the acquisition, collection, and divestment of art. Art Capital has been providing art-related financial services in the United States under the trade name "Art Capital Group" since at least as early as May 2001, and has developed a considerable client base in the art-related financial services market in the United States under that trade name.

10. The ART CAPITAL GROUP® trademark is registered upon the Principal Register of the United States Patent and Trademark Office as United States Registration No. 3190377, issued on January 2, 2007. Said registration, which was duly and lawfully issued and remains in full force and effect, is reflected in the annexed record of the United States Patent and Trademark Office at Exhibit A. The ART CAPITAL GROUP® trademark registration covers use of the mark in connection with, *inter alia*, "financial services, namely arranging for the financing for leasing of art collections, arranging for corporate and foundation sponsorship of art exhibitions, brokerage of art collections available for exhibition; brokerage of art from museums, corporations, organizations and private individuals to museums, estates, corporations, organizations and private individuals; [and] creating exhibitions by gathering art work from museums, estates, corporations and private individuals and organizing them into exhibitions; leasing works of art from museums, estates, corporations, organizations and private individuals to museums, estates, corporations, organizations and private individuals."

11. Art Capital is the sole owner of all right, title and interest in the ART CAPITAL GROUP® trademark and the Art Capital Group trade name.

12. On or around September 27, 2000, Art Capital registered the internet domain name "www.artcapitalgroup.com." Art Capital launched the current version of its website on or around April 3, 2005.

13. Since its launch date, the Art Capital website has maintained a consistently similar look and feel, and trade dress. A printout of the home page of the Art Capital website is attached hereto as Exhibit B.

14. The look and feel and trade dress of the Art Capital website includes:

   a. use of the ART CAPITAL GROUP® logo in the upper left hand corner of the page, featuring the term "ART" in light text encased in a colored square;

   b. a rotating depiction of various works of art in a band that extends through the central portion of the stark, white home page; and

   c. a display of links pointing to pages within the Art Capital website listed in a column running down the left hand side of the home page just beneath the Art Capital logo.

15. Art Capital Group, LLC alone owns all right, interest, and title in the copyright of the Art Capital logo and website design.

16. Art Capital Group, LLC registered its copyright in the above-described Art Capital website with the United States Copyright Office, and received from the Register of Copyrights a Copyright Registration Certificate identified as TX 6-543-372, dated as of April 27, 2007, a copy of which is annexed hereto as Exhibit C.

17. Over the last seven years, Art Capital has spent in excess of two million dollars ($2,000,000.) in connection with its advertisement and promotion of its services under the Art Capital Group trade name and the ART CAPITAL GROUP® trademark in order to establish this trademark in the minds of consumers as a source of high-quality art-related financial services.

18. As a result of Art Capital's wide and prominent advertising, promotion, and exclusive use of its mark, the ART CAPITAL GROUP® trademark has developed and now possesses a secondary and distinctive trademark meaning to domestic and international purchasers of art-related financial services offered in the United States.

19. Upon information and belief, Defendant Fine Art Capital offers art-related financial services nearly identical to those offered by Art Capital under the confusingly similar and unregistered trade name FINE ART CAPITAL.

20. Defendants have never been authorized to use the ART CAPITAL trademark.

21. Fine Art Capital also maintains a website located at www.fineartcapital.com, the domain name for which was registered on or around November 23, 2002. Upon information and belief, the current version of this website was launched on or around February 25, 2006.

22. Fine Art Capital's website, www.fineartcapital.com, has a confusingly similar look and feel, and trade dress, to that of the Art Capital website. For example, like the Art Capital website, the Fine Art Capital website also features its logo in the upper left hand corner. Like the Art Capital website, Defendant's website also features a depiction of various works of art in the center of a stark, white home page. Like the Art Capital website, the Fine Art Capital website also features a display of links pointing to pages with its website listed in a column running down the left hand side of the home page just beneath its logo. A printout of the home page of the Fine Art Capital Website is attached hereto as Exhibit D.

23. Defendant Fine Art Capital also employs use of a logo that is confusingly similar to Art Capital's logo. Like Plaintiffs' logo, the Defendant's logo features its mark in the upper left hand corner of the Fine Art Capital website home page, in light text encased in a colored square.

24. Defendants have never been authorized to use the Art Capital website.

25. Although the current version of the Fine Art Capital website was launched on February 25, 2006, the website displays a misleading copyright notice falsely indicating that the site's design and features have remain both unchanged and also copyright protected since 2003. This improper notice, which reads: "Copyright © 2003 by FINE ART CAPITAL, LLC., All Rights Reserved" underscores Defendants' demonstrated pattern and practice of deceptively conveying the message to potential clients that Fine Art Capital has serviced the art-related financial services market equally as long as Art Capital.

26. Indeed, Defendants seek to falsely portray Fine Art Capital's pedigree as a long-established financial services firm to the arts purchasing community through the association with Emigrant. As set forth in its most recent advertising campaign, Fine Art Capital proclaims "We are a part of Emigrant Bank (founded 1850)." A copy of this advertisement is annexed hereto as Exhibit E. This advertisement falsely claims that it has been in existence since 1850.

27. In fact, where Emigrant may trace its roots to 1850, Fine Art Capital cannot claim to have been in existence in any form for more than several years, at most. Nevertheless, Emigrant permits its subsidiary, Fine Art Capital, to falsely associate itself with the Emigrant brand in an effort to falsely communicate Fine Art Capital's purported status as a financing services firm of substance and long-term experience, when in fact the opposite is true.

28. On February 23, 2007, Art Capital sent correspondence via certified mail to Andy Augenblick, who is upon information and belief the founder and principal of Fine Art Capital, notifying Fine Art Capital both that the ART CAPITAL GROUP® trademark is registered in the U.S. Patent & Trademark Office, and also that Fine Art Capital's conduct was wrongfully infringing upon Art Capital's intellectual property. In that correspondence, Art Capital requested

that Fine Art Capital both cease use of its confusingly similar mark and logo, and also modify its website in such a way that it would not portray the same look and feel and trade dress of the Art Capital website.

29.  In response, by correspondence dated March 9, 2007, Fine Art Capital rejected Art Capital's notice and its contents, and indicated that it would continue to market and advertise its services in the same infringing manner.

## FIRST CAUSE OF ACTION
### (Trademark Infringement - 15 U.S.C. § 1114)

30.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.  Defendants' use of the Fine Art Capital trade name infringes Art Capital's rights in the ART CAPITAL GROUP® trademark.

32.  The art-related financial services offered under the Fine Art Capital trade name are almost identical to the services offered by Art Capital.

33.  Defendants' use of an almost identical trade name in connection with such services was intended to and does cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' services in that the public and others are likely to wrongly believe that Defendants' services are provided by ART CAPITAL GROUP®, or are sponsored by, or approved by, or licensed by, or affiliated with or in some way legitimately connected with the Plaintiffs, all to Plaintiffs' irreparable harm.

34.  Art Capital has no control over the quality of services offered by Defendant Fine Art Capital, and because of the confusion as to the source, origin or sponsorship engendered by Defendant Fine Art Capital, the valuable goodwill associated with the ART CAPITAL GROUP® trademark is at the mercy of the Defendants.

35. Upon information and belief, despite the fact that Defendants had and have knowledge that the trademark laws of the United States protect the ART CAPITAL GROUP® trademark, they nevertheless willfully continue to infringe upon the ART CAPITAL GROUP® trademark.

36. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Art Capital.

37. The conduct of the Defendants as described herein constitutes trademark infringement under the Lanham Act, 15 U.S.C. § 1114.

## SECOND CAUSE OF ACTION
### (Unfair Competition and Trade Dress Infringement - 15 U.S.C § 1125(a))

38. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Art Capital has invested substantial time, effort, resources, and money into both the form and content of its website and logo.

40. In designing the Fine Art Capital website, Defendants wrongly took from Art Capital's website, without authorization or consent, numerous visual concepts, ideas, images, and overall design. In sum, they improperly took from Art Capital the "look and feel," and trade dress, of its website and logo.

41. Upon information and belief, Defendants used the intellectual property in the "look and feel," and trade dress, of Art Capital's website in order to unfairly capitalize upon the goodwill and business reputation that Art Capital has developed in the art-related financial services industry, and to gain an unfair competitive advantage over Art Capital and others.

42. Defendants did gain an unfair advantage in the marketplace by wrongly using the intellectual property in and "look and feel," and trade dress, of Art Capital's website and logo.

43. Defendants' use of the intellectual property in Art Capital's website and logo was intended to and does confuse, mislead and deceive a substantial number of relevant clients and other members of the public as to the origin of the website used by Defendant Fine Art Capital and the services described therein.

44. Defendants' use of the intellectual property in and "look and feel," and trade dress, of Art Capital's website and logo constitutes a false designation of origin, a false description, and a false representation that the website and logo originated from or was authorized by Art Capital, all in violation of 15 U.S.C. § 1125(a).

45. Upon information and belief, Defendants are using the intellectual property in and "look and feel," and trade dress, of Art Capital's website and logo with the willful and calculated purpose of misleading, deceiving, and/or confusing clients and the public as to the origin and authenticity of the website and logo and the services described therein, and is doing so to trade upon Art Capital's goodwill and business reputation.

46. Defendants' use of the intellectual property in and "look and feel," and trade dress, of Art Capital's website and logo has directly and proximately caused injury to Art Capital and to its goodwill and business reputation, and will continue to cause such damage and to cause confusion or mistake among the public unless enjoined by this Court.

47. Moreover, Defendants' improper use of an inaccurate copyright notice on its website constitutes a false description and a false representation that the website has been in existence since 2003, rather than its actual launch date of 2006, in violation of 15 U.S.C. § 1125(a).

48. Fine Art Capital's improper advertisement of its association with Emigrant similarly creates a false impression that the company's length of existence and depth of

experience far exceed their actual substance, which similarly constitutes a false description and a false representation in violation of 15 U.S.C. § 1125(a).

49. Defendants' conduct has been willful within the meaning of the Lanham Act.

50. Art Capital has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Tarnishment - 15 U.S.C. § 1125(c))

51. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. The ART CAPITAL GROUP® trademark is distinctive by virtue of having acquired a secondary and distinctive trademark meaning to purchasers of art-related financial services.

53. Defendants use the confusingly similar trade name -- Fine Art Capital -- in commerce, including by promoting and selling art-related financial services bearing the "Fine Art Capital" trade name, and promoting services via a website and logo that are virtually identical to the ART CAPITAL GROUP® website and logo.

54. Defendants' commercial use of the "Fine Art Capital" trade name began after the ART CAPITAL GROUP® trademark had become distinctive by virtue of having acquired a secondary and distinctive trademark meaning to purchasers of art-related financial services.

55. Defendants' use of a confusingly similar trade name, logo, and website as described herein causes, and will continue to cause, the dilution of the distinctive quality of the ART CAPITAL GROUP® trademark.

56. More specifically, Defendants' use of a confusingly similar trade name has caused, will cause, and/or is likely to cause, the reduction in value of the ART CAPITAL

GROUP® trademark because consumers of art-related financial services will associate the lack of quality in Defendant Fine Art Capital's services with Art Capital's services.

57. The conduct of the Defendants as described herein constitute tarnishment under the Lanham Act, 15 U.S.C. § 1125(c).

## FOURTH CAUSE OF ACTION
### (Copyright Infringement - 17 U.S.C. §§ 106 and 501, *et seq.*)

58. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Art Capital Group, LLC is the sole proprietor of all rights, title and interest in and to the copyright of the Art Capital website. Art Capital has the exclusive right to reproduce and distribute its copyrighted work, the Art Capital website, as provided by 17 U.S.C. §§ 106 and 117.

60. Because Defendants have never been authorized to reproduce, modify, distribute, or otherwise use the Art Capital website or any component thereof, its above-described conduct violates the federal Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.* Defendants have therefore infringed Art Capital's copyright in the Art Capital website.

61. On information and belief, Defendant Fine Art Capital plans to continue infringing Art Capital's copyright by continuing to maintain the Fine Art Capital website as it is described in this Complaint.

62. Defendants have thereby caused and will continue to cause Art Capital to lose current and potential business as well as market position, goodwill, and business reputation. Art Capital cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

63.  As a result of Defendants' copyright infringement, Art Capital has suffered, and will continue to suffer, irreparable injury.

64.  On information and belief, Defendants infringed upon Art Capital's copyrights willfully and deliberately, and will continue to do so unless enjoined by this Court.

### FIFTH CAUSE OF ACTION
### (Dilution and Unfair Competition - N.Y.G.B.L. § 360-1)

65.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.  The ART CAPITAL GROUP® trademark is distinctive by virtue of having acquired a secondary and distinctive trademark meaning to international purchasers of art-related financial services.

67.  Defendants' use of the FINE ART CAPITAL trade name as described herein causes, will continue to cause, and is likely to cause, the dilution of the distinctive quality of the ART CAPITAL GROUP® trademark.

68.  More specifically, Defendants' use of a confusingly similar trade name has caused, will cause, and/or is likely to cause, the reduction in value of the ART CAPITAL GROUP® trademark because consumers of art-related financial services will wrongly associate the lack of quality in Defendant Fine Art Capital's art-related financial service with the Art Capital's art-related financial services, and because the ART CAPITAL GROUP® trademark will cease to serve as a distinctive identifier of Art Capital's services.

69.  The conduct of the Defendants as described herein constituted, and continues to constitute, dilution and unfair competition under N.Y.G.B.L. § 360-1.

## SIXTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

70. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. Defendants have provided art-related financial services under a confusingly similar trade name, and have promoted and advertised such services via a near-identical website employing a near-identical logo, without Art Capital's consent thus infringing the ART CAPITAL GROUP® trademark and the Art Capital trade name.

72. As a result of the confusing similarity of the trade name employed by Defendants and the other infringing conduct described above, the offering of almost identical services by Defendants constitutes an infringement of Art Capital's common law rights in and to the ART CAPITAL GROUP® trademark and the Art Capital trade name in that such use is likely to cause confusion, deception, and mistake in the minds of the public with respect to the origin, source and affiliation of the art-related financial services.

73. Defendants' use of a trade name confusingly similar to the ART CAPITAL GROUP® trademark and the other infringing conduct set forth herein constitutes common law trademark infringement under New York common law.

74. Defendants' unlawful conduct has caused, is causing, and will likely continue to cause immediate and irreparable injury to Art Capital and to its respective goodwill and reputation and will continue to damage Art Capital and confuse, mislead, or deceive the public unless enjoined by this Court.

75. Art Capital has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
(Common Law Unfair Competition)

76. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. Art Capital has invested substantial time, effort, resources, and money into both the form and content of its website and logo.

78. Defendants improperly took from Art Capital the "look and feel," and trade dress, of its website and logo.

79. Upon information and belief, Defendants used and continue to use the intellectual property in the "look and feel," and trade dress, of Art Capital's website in order to unfairly capitalize upon the goodwill and business reputation that Art Capital has developed in the art-related financial services industry, and to gain an unfair competitive advantage over Art Capital and others.

80. Defendants did gain an unfair advantage in the marketplace by wrongly using the intellectual property in and "look and feel," and trade dress, of Art Capital's website and logo.

81. Defendants' use of the intellectual property in Art Capital's website and logo was intended to and does confuse, mislead and deceive a substantial number of relevant clients and other members of the public as to the origin of the website used by Fine Art Capital and the services described therein.

82. Art Capital has been, and is likely to be further, damaged by Defendants' improper and intentional use of a misleadingly similar "look and feel," and trade dress, in its website and logo such that relevant clients are likely to be induced into engaging Defendants' services in the mistaken belief that they are engaging Art Capital's services or that Defendants' services are endorsed by, sponsored by, or in some way connected with Art Capital.

83. Defendants have profited by the conduct complained of herein, and Art Capital has been damaged and will be irreparably injured by these ongoing activities, for which Art Capital has no remedy at law.

84. Defendants' conduct will continue unless enjoined by this Court.

85. The acts and conduct of Defendants complained of herein constitute unfair competition at common law.

## EIGHTH CAUSE OF ACTION
### (Common Law Unfair Competition)

86. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87. Defendants have has misrepresented the length of time that Fine Art Capital has offered services to the public, as well as the experience that it has in financial services firm in the arts purchasing community.

88. By falsely stating the copyright notice on its website to communicate to the public its existence since 2003 when it had not been launched until 2006, and by falsely communicating its existence as a part of Emigrant since 1850 when it had not been in existence until recently, Defendants are making false and misleading statements about the services they provide.

89. These statements are deceptive and have the tendency to deceive a substantial portion of consumers in the arts financing market.

90. The false and misleading statements are likely to influence the financing decisions of arts purchasers as these consumers may prefer to borrow from an entity that they believe to be a more experienced lender, when in fact, Fine Art Capital was established only within the last few years and does not have the depth of experience in lending that it advertises.

91. There is a likelihood of injury to Art Capital through loss of goodwill, enhanced goodwill, diversion of financings, and in other manners negatively impacting the profits of Art Capital.

92. Defendants' conduct will continue unless enjoined by this Court.

93. Defendants' acts and conduct complained of herein constitute unfair competition at common law.

WHEREFORE, Plaintiffs pray for judgment from this Court as follows:

A. That Defendants be permanently enjoined from infringing the ART CAPITAL GROUP® trademark via use of the "Fine Art Capital" trade name;

B. That Defendants be permanently enjoined from disseminating, publishing, displaying, advertising, reproducing, printing, or using in any way the intellectual property protected under the Art Capital copyright;

C. That Defendants be directed to modify its website and logo such that it does not improperly create the same "look and feel" and trade dress as Art Capital's website and logo;

D. That Art Capital be awarded damages and Defendants' profits in an amount to be determined at trial in connection with Defendants' acts of trademark infringement, trademark dilution, and unfair competition;

E. That Art Capital be awarded damages for the infringement committed by Defendants;

F. That Defendants be ordered to pay Art Capital's costs incurred herein including reasonable attorney's fees;

G.  That trebling of damages be ascertained for all damages that may be so trebled under 17 U.S.C. § 505;

H.  That exemplary and punitive damages be awarded; and

I.  That such other and further relief be awarded to Plaintiffs which this Court deems just, proper and equitable.


Dated: New York, New York
       May 17, 2007

                            BINGHAM McCUTCHEN LLP


                          By: _____
                              Edward F. Maluf (EM 6884)
                              Eugenie M. Cesar-Fabian (EF 1104)
                          399 Park Avenue
                          New York, New York 10022
                          (212) 705-7000

                          *Attorneys for Plaintiffs*
                          *Art Capital Group, Inc and*
                          *Art Capital Group, LLC*