DORSEY & WHITNEY LLP
Bruce R. Ewing (BE-0724)
Sandra Edelman (SE-6853)
Marc S. Reiner (MR-6669)
Gianfranco G. Mitrione (GM-8618)
250 Park Avenue
New York, New York 10177
(212) 415-9200

Attorneys for Defendants
Fine Art Capital, LLC and Emigrant Bank

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ART CAPITAL GROUP, LLC and         :
CAPITAL GROUP, INC.,               :
                                   :
                                   :   07 Civ. 3879 (SAS)
          Plaintiffs,              :
                                   :
     - against -                   :
                                   :
FINE ART CAPITAL, LLC and          :
EMIGRANT BANK,                     :
                                   :
          Defendants.              :
-----------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' APPLICATION FOR A TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

## **PRELIMINARY STATEMENT**

The motion for a temporary restraining order filed by plaintiffs Art Capital Group, LLC and Art Capital Group, Inc. ("plaintiffs") contains a breathtaking variety of procedural and substantive deficiencies, any of which warrants the denial of the relief requested. Defendants Emigrant Bank ("Emigrant") and "Fine Art Capital, LLC" (which no longer exists as a technical matter, having been renamed Emigrant Bank Fine Art Finance, LLC ("EBFAF")) offer this abbreviated memorandum summarizing their factual and legal arguments in anticipation of more complete submissions that will be offered to the extent the Court decides to consider further plaintiffs' unfounded request for expedited relief.

As an initial matter, the Court dismissed this case with prejudice, subject to a confidential settlement agreement, in December 2007. Notwithstanding this dismissal, plaintiffs have filed their motion under Fed. R. Civ. P. 65 as if the Court had not entered that dismissal and as if the claims that were originally pleaded were still operative. As originally filed, this case concerned claims that the use of the trademark and trade name "Fine Art Capital, LLC" violated plaintiffs' purported rights in the trademark and trade name "Art Capital Group." The current motion seeks to enjoin the use of "Emigrant Bank Fine Art Finance" on the ground that such use causes a conflict with "Fine Art Finance." Moreover, the "Fine Art Finance" term in which plaintiffs claim rights is apparently the name of a separate entity affiliated with them that is not a party to this proceeding, in the same way that EBFAF is also not a party to this proceeding. In these circumstances, it is impossible as a matter of law for the Court to grant relief of any kind in this action, let alone the extraordinary relief plaintiffs seek.

Aside from this fatal procedural defect, the parties' confidential settlement agreement, an unsigned and undated version of which is attached to the moving declaration of Ian Peck as Exhibit A, completely bars the claims plaintiffs try to assert. Contrary to the extraordinarily

misleading presentation in plaintiffs' submission, paragraph 1.5 of that agreement did <u>not</u> require defendants to adopt the "contemplated" trade name "EB Fine Art LLC." In fact, that paragraph specifically confirms defendants' "right to adopt any other trade name, mark, designation or domain name at any time in connection with its business, provided such trade name, mark designation or domain name does not contain both the words 'Art' and 'Capital'" if defendants "reasonably determine[]" not to proceed with use of "EB Fine Art." After deciding not to use "EB Fine Art," defendants made good faith efforts to select a name that does not include both "Art" and "Capital" to comply with the agreement and communicate that defendants' business is solely to finance art and does not include the sale, purchase or appraisal of art.

As for the decision to forego use of "EB Fine Art," the testimonial and documentary evidence defendants are prepared to present will establish that they reasonably decided not to use that trade name because they: (i) wanted to create a more explicit and readily identifiable association with the well known EMIGRANT BANK trademark; (ii) were advised that "EB Fine Art" created the misimpression that the company was an art gallery in competition with its own customers rather than an art-finance company; and (iii) would have been required to purchase the domain name "ebfineart.com" from a third party. Given the existence of these three non-pretextual reasons for the decision to decline use of "EB Fine Art" and the agreement's lack of restrictions on a substitute name, apart from the bar on the use of both "Art" and "Capital," the adoption of "Emigrant Bank Fine Art Finance" was necessarily authorized by that contract and cannot be violative of plaintiffs' claimed rights.

As if this were not enough, plaintiffs almost entirely ignore the plain meaning of paragraph 1.6 of the agreement that bars <u>them</u> from claiming trademark or other enforceable rights in any designation containing the term "Fine Art," including "Fine Art Finance."

> (a) In order to avoid consumer confusion in the marketplace, [plaintiffs] shall not use the term "Fine Art" in any form as all or part of any trademark, service mark, trade name, domain name, advertising slogan or tagline . . . . (b) [Plaintiffs] may continue using the trade name "Fine Art Finance," solely as the trade name of the entity providing financing to [plaintiffs'] customers in relation to financing documents and UCC filings, provided that the trade name is not used in any sales, marketing, advertising or promotional materials for any products and services by [plaintiffs].

Plaintiffs' use of "Fine Art Finance" has never extended beyond transactional documents and regulatory filings, and that term is not believed to have ever appeared in advertising materials. Thus, "Fine Art Finance" has never functioned as a trademark and can never acquire protection, since paragraph 1.6 strictly limits plaintiffs' use of the term.

Apart from the insuperable hurdle presented by the parties' agreement, there are so many other fatal factual and legal defects in plaintiffs' claims that they can only be summarized briefly at this stage. As an initial matter, in order to obtain relief, plaintiffs must establish that they own enforceable rights in the term "Fine Art Finance," which, as used in connection with financings secured by fine art, is either generic or, at best, descriptive. Not only do plaintiffs fail to mention this essential element of the claims they are trying to articulate, they offer zero evidence that "Fine Art Finance" has acquired any secondary meaning as a trade name in which they can claim rights. Nor could such a showing be made, since paragraph 1.6 of the settlement agreement prohibits plaintiffs from using "Fine Art Finance" in "any sales, marketing, advertising or promotional materials."

Apart from the issue of protectability, plaintiffs must establish a likelihood of confusion resulting from plaintiffs' very limited permitted use of "Fine Art Finance" and the designation "Emigrant Bank Fine Art Finance," even though plaintiffs are prohibited from using "Fine Art Finance" in any sales, marketing, advertising and promotional materials, and "Emigrant Bank Fine Art Finance" references Emigrant, a longstanding, well-known New York financial

institution. The only feeble effort plaintiffs try to muster on the issue of confusion is to argue that bankers and state regulatory authorities will be confused by UCC filings bearing both of the trade names at issue, but plaintiffs never bother to acknowledge that defendants <u>have</u> <u>not</u> <u>used</u> and <u>are</u> <u>not</u> <u>going</u> <u>to</u> <u>use</u> "Fine Art Finance" in their UCC filings, meaning that there can never be any confusion in the context of UCC filings because "Fine Art Finance" will <u>never</u> appear on such documents filed by defendants. Defendants' counsel advised plaintiffs' counsel of this fact in her letter of May 6, 2008, *see* Maluf Dec., Exh. C, but not one word about it appears in plaintiffs' submission, highlighting yet again the misleading nature of their presentation.

In order to camouflage the obvious deficiencies in their arguments, defendants resort to strings of adjectives about the "malicious," "offensive" "unreasonable," "disingenuous," "bad faith" adoption of "Emigrant Bank Fine Art Finance." However, name-calling is no substitute for prohibitions not contained in the parties' agreement or the elements of trademark protection the law requires. The present motion is nothing more than an outburst by a party to a settlement that now regrets the deal it made and is punitively lashing out at a competitor that has no desire other than to pursue its business in good faith in reliance on its own goodwill. In one of the few accurate statements in plaintiffs' submission, they note the importance courts place on the enforcement of settlement agreements. Defendants could not agree more and respectfully request that the Court enforce the parties' settlement agreement according to its express terms and deny plaintiffs' motion.

## ARGUMENT

**1.    PLAINTIFFS CANNOT OBTAIN ANY RELIEF IN THIS DISMISSED ACTION**

This action was closed on December 10, 2007 after the Court signed the parties' Joint Stipulation of Dismissal, which dismissed the case with prejudice. This dismissal with prejudice served as a final adjudication of the issues therein and barred any further action between the

parties regarding those issues. *See, e.g., Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir.1997). To the extent any relief is available in this action, it could only be granted under Fed. R. Civ. P. 60(b), but no such motion was made by plaintiffs and, indeed, the only relief sought is a temporary restraining order issued under Fed. R. Civ. P. 65 that appears to be founded on: (i) a claim for breach of the settlement agreement; and (ii) claims for unfair competition and trademark infringement stemming from defendants' use of the trademark and trade name "Emigrant Bank Fine Art Finance" in alleged violation of plaintiffs' claimed rights in the term "Fine Art Finance." *See* Pl. Mem. of Law at 11-14.

However, none of the claims pleaded in this case before the dismissal dealt in any way with the term "Fine Art Finance," the trademark "Emigrant Bank Fine Art Finance" or, of course, the settlement agreement that plaintiffs now allege was breached. To the contrary, the prior claims addressed the alleged "Art Capital Group" trademark and the parties' then-existing websites. As if this were not enough, one of the defendants identified in the original complaint, "Fine Art Capital LLC," no longer exists as a legal matter, and the entity apparently related to plaintiffs that is actually called "Fine Art Finance" is also not a party. Peck Dec., ¶ 5. In the absence of properly pleaded claims set forth in a complaint (not merely in a brief) and accurately identified parties, no relief of any kind can be afforded to plaintiffs in this action. This is especially true given that plaintiffs seek the extraordinary remedy of a temporary restraining order. *See Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997) ("A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that will not be granted lightly.").

2.  **PLAINTIFFS' CLAIMS FOR BREACH OF THE SETTLEMENT AGREEMENT, UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT ARE BASELESS**

As the basis for their request for emergency relief, plaintiffs rely on unpleaded claims for unfair competition and trademark infringement and a claim for breach of the settlement agreement. As to the purported contract claim, it is well established that a breach of contract does not ordinarily constitute irreparable harm sufficient to justify emergency relief. *See, e.g., Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). Indeed, it is telling that plaintiffs do not cite any case in which irreparable harm flowed from allegations of breach of contract. As to the remaining claims, plaintiffs cannot demonstrate either a likelihood of success on, or sufficiently serious questions going to, the merits of those claims and therefore plaintiffs are not entitled to a temporary restraining order or preliminary injunction. *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142-43 (2d Cir. 1997).

Plaintiffs' trademark infringement and unfair competition claims are based on their assertion that defendants' use of "Emigrant Bank Fine Art Finance" in connection with finance services in which art serves as collateral infringes their supposed rights in the term "Fine Art Finance." *See* Pl. Mem. of Law at 11-13. To establish a trademark infringement claim under the Lanham Act, a plaintiff must show that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993). Similarly, a claim for unfair competition requires plaintiffs to demonstrate that they have a protectible property right that has been violated. *See, e.g., Merritt Forbes & Co. Inc. v. Newman Inv. Securities, Inc.*, 604 F. Supp. 943, 956 (S.D.N.Y. 1985); *Cardinal Industries, Inc. v. Pressman Toy Corp.*, No. 96 Civ. 4590 (MBM), 1996 WL 724730, *9 (S.D.N.Y. Dec 17, 1996).

"Fine Art Finance" is a trade name, meaning that it is ineligible for federal registration. *See In re Antenna Specialists Co.*, 408 F.2d 1052 (C.C.P.A. 1969); J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 9:13 at 9-27. "Fine Art Finance" is also, at best,[1] a descriptive term as applied to finance services involving the purchase, sale or collateralization of fine art, meaning that it cannot be protected as a trademark unless it has acquired secondary meaning among some class of consumers as a designation denoting a particular company. *See In re Connecticut Mobilecom, Inc.*, No. 02-12725 (WHP), 2003 WL 23021959 at *10 (S.D.N.Y. Dec. 23, 2003) ("Connecticut Telephone" was a descriptive trade name and eligible for protection only upon a showing that the term had acquired secondary meaning); *U.S. Gold & Silver Investments, Inc. v. U.S.*, 885 F.2d 620 (9th Cir. 1989) ("U.S. Gold" was a descriptive trade name ineligible for protection under Lanham Act due to absence of proof of secondary meaning); *American Television and Communications Corp. v. American Television Communications and Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir. 1987) ("American Television and Communications Corp." was a descriptive trade name and proof of alleged secondary meaning was insufficient); *see also Medical Economics Co. v. Prescribing Reference, Inc.*, 294 F. Supp.2d 456, 463 (S.D.N.Y. 2003) ("In general, descriptive marks are traditionally disfavored under the law and have been granted a minimum of protection under the Lanham Act when secondary meaning has been shown, due to equitable concerns about the unfairness of depriving the owners of a mark of the goodwill they have developed and depriving the public of the ability to recognize the source of the product.").

---

[1] At worst, "Fine Art Finance" as used with fine art finance services is a generic term ineligible for trademark protection. *See, e.g., Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 100 (2d Cir.1989) ("Murphy bed" generic); *Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F. Supp. 547 (S.D.N.Y. 1972), *aff'd*, 480 F.2d 801 (2d Cir. 1973) ("Breath Savers" breath mints v. "Breath Pleasers" breath mints; preliminary injunction denied because "small variations are likely enough of difference" where "breath" is generic and "free as the air").

"Proof of secondary meaning entails vigorous evidentiary requirements," and the plaintiff bears a "heavy burden" to show that its alleged trademark is eligible for protection by presenting evidence of sales success, advertising expenditures, unsolicited media coverage, consumer studies and other proof establishing that its descriptive designation is viewed by the relevant public as a term exclusively associated with it. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985); *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987).

Here, plaintiffs have offered absolutely no evidence that "Fine Art Finance" has acquired secondary meaning, and defendants believe that such a showing would be impossible because the term has never appeared in anything other than financing statements and lending documents. Moreover, paragraph 1.6 of the settlement agreement bars the future use of that term in any manner by which it could acquire secondary meaning. Simply put, if plaintiffs cannot use "Fine Art Finance" in "any sales, marketing, advertising or promotional materials for any products and services," Peck Dec., Exh. A, ¶ 1.6(b), and cannot "use the term 'Fine Art' in any form as all or part of any trademark, service mark, trade name, domain name, advertising slogan or tagline," *id.*, ¶ 1.6(a), establishing secondary meaning in "Fine Art Finance" is an impossibility. Further, plaintiffs' name is Art Capital Group and they are known in the market by the name Art Capital Group. There is no association in the market of "Fine Art Finance" with plaintiffs or their business. What plaintiffs are attempting to do, then, is monopolize the descriptive term "fine art finance" without making any showing that anyone perceives that term as a trademark exclusively owned by or associated with them, and this the law does not permit. *See W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868, 871 (2d Cir. 1966) ("the law does not favor trademark monopolization of such descriptive terms"); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d

604, 609 (7th Cir. 1986) (importance of promoting free and fair competition limits extent to which descriptive terms can attain trademark protection).

As for plaintiffs' purported contract claim, it is premised on allegations that defendants have "breached a key provision" of the settlement agreement by adopting the trademark "Emigrant Bank Fine Art Finance." Pl. Mem. of Law at 11. Plaintiffs misleadingly state that defendants "were required to adopt either EB FINANCE ART [sic] or EB FINANCE ART LLC [sic] as their new name." *Id.* This is incorrect. The settlement agreement itself imposes no such "requirement." In reality, the agreement states that defendants "will transition . . . from use of the trade name 'Fine Art Capital' to, <u>it is contemplated as of the Effective Date of this Agreement</u>, 'EB Fine Art LLC' or 'EB Fine Art.'" Peck Dec., Exh. A, ¶ 1.5 (emphasis added). That paragraph of the settlement agreement further provides that if defendants:

> reasonably determine[] to not use "EB Fine Art LLC" or "EB Fine Art" for [defendants'] new trade name and service mark and domain names, [defendants] reserve[] the right to adopt any other trade name, mark, designation or domain name at any time in connection with its business, provided such trade name, mark, designation or domain name does not contain both the words "Art" and "Capital."

*Id.*. Paragraph 1.5 of the agreement therefore makes clear that defendants retained the unfettered right to use whatever trade name, mark or designation they choose, subject only to the restriction that they not use both the words "art" and "capital." *Id.* This limited restriction that defendants have not breached was perfectly understandable considering that "Art Capital Group" was the trademark plaintiffs sought to protect when this action was commenced. Plaintiffs therefore cannot demonstrate that they are likely to succeed on the merits of their purported contract claim because it is evident that defendants simply exercised the rights reserved to them under the agreement by reasonably determining not to use "EB Fine Art" as their new trade name after concluding that it was unsuitable and inadequate for the various reasons recited above at page 2.

Plaintiffs also argue, without much elaboration, that defendants have "breached their implied covenant of good faith and fair dealing" in the settlement agreement, but this argument also fails. *See* Pl. Mem. of Law at 11. "New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract." *Ari & Co. v. Regent Int'l Corp.*, 273 F. Supp.2d 518, 523 (S.D.N.Y. 2003); *see also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 394-95 (2d Cir. 2002) (rejecting claims for breach of implied covenant in context of trademark settlement agreement that was clear on its face); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989) ("These plaintiffs do not invoke an implied covenant of good faith to protect legitimate, mutually contemplated benefits of the indentures; rather, they seek to have this Court create an additional benefit for which they did not bargain."). Just as plaintiffs cannot invoke contractual requirements that are not in the settlement agreement, they cannot use the implied covenant of good faith and fair dealing to impose obligations to which defendants never agreed.

## CONCLUSION

For all of the foregoing reasons, the Court should deny plaintiffs' motion in its entirety.

Dated: New York, New York
May 19, 2008

DORSEY & WHITNEY LLP

By _____
Bruce R. Ewing (BE-0724)
Sandra Edelman (SE-6853)
Marc S. Reiner (MR-6669)
Gianfranco G. Mitrione (GM-8618)
250 Park Avenue
New York, NY 10177
(212) 415-9200

Attorneys for Defendants
Fine Art Capital, LLC and
Emigrant Bank